## Harvey Miller *v.* J. Solis Cohen, Appellant.

*Negligence—Collision between horse and wagon in public park.*

In an action to recover damages for personal injuries it appeared that on the day of the accident, defendant, his son, a boy fifteen years of age, his daughter and her friend were riding northward on horseback on a road thirty-five feet wide in Fairmount Park in Philadelphia. Plaintiff and a friend who was driving in a one horse buggy approached them from the opposite direction. Ahead of plaintiff and his friend, on the right hand or same side of the road about three feet from the gutter, was a two horse Germantown wagon being driven southward at a slow pace. As the driver of the buggy turned to the left to pass the wagon in front, the horseback party, four abreast, came up. There was space for all, but as they met, the width between the Germantown wagon and the nearest horse, on which defendant's son was riding, seemed narrow for plaintiff's buggy to pass, and defendant's son at his father's suggestion attempted to fall back behind the other three riders just as plaintiff's driver pulled his horse again to the right to get in front of the Germantown wagon. This movement threw the hind wheel of the buggy towards the left of the roadbed. The horse on which defendant's son was riding backed and, swerving a little, came into collision with the left hind wheel of the buggy. The wheel broke, plaintiff's horse took fright and ran away, and plaintiff was thrown out and severely injured. *Held*, that neither defendant nor defendant's son was guilty of negligence, and that plaintiff was not entitled to recover.

Argued Jan. 24, 1896. Appeal No. 66, July T., 1895, by defendant, from judgment of C. P. No. 1, Philadelphia County, March T., 1893, No. 809, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries.    Before BRÉGY, J.

The facts appear by the opinion of the Supreme Court.

Defendant's points were among others as follows :

9. There is no evidence of negligence on the part of the defendant or his son.  *Answer :* I refuse. [1]

10. There is evidence of contributory negligence upon the part of the plaintiff.  *Answer :* I refuse. [2]

11. Under all the evidence in the case the jury should find for the defendant.  *Answer :* I refuse. [3]

Verdict and judgment for plaintiff for $4,500.   Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*John G. Johnson, George P. Rich* and *Henry C. Boyer* with him, for appellant.—There was no evidence in the case on which to hold the defendant liable for the negligent act of his son ;— assuming that the negligence of the son caused the injury to plaintiff: Paul v. Hummel, 43 Mo. 119 ; Tifft v. Tifft, 4 Denio, 175 ; Magee v. Willing, 31 Leg. Int. 37 ; Schlossberg v. Lahr, 60 How. Pr. 450 ; Wilson v. Garrard, 59 Ill. 51 ; Paulin v. Howser, 63 Ill. 312 ; Smith v. Davenport, 25 Pac. Rep. 851 ; Edwards v. Crume, 13 Kansas, 261 ; Maddox v. Brown, 71 Me. 432 ; Hagerty v. Powers, 66 Cal. 368 ; Strohl v. Levan, 39 Pa. 177 ; McLoughlin v. Pryor, 4 M. & G. 48 ; Bard v. Yohn, 26 Pa. 482 ; Hower v. Ulrich, 156 Pa. 410 ; Quarman v. Burnett, 6 M. & W. 499 ; Wheatley v. Patrick, 2 M. & W. 650 : 9 Am. & Eng. Ency. of Law, 768.

There was not only no evidence of negligence on the part of the defendant or his son, but the plaintiff's testimony showed very gross negligence on his part: Goshorn v. Smith, 92 Pa. 435 ; Dean v. Penna. R. R., 129 Pa. 514.

The rule is that where the driver of a vehicle is not a common carrier, and an accident happens to one riding with him through the concurrent negligence of the driver and a third party, the negligence of the driver cannot be imputed to the party injured where he himself did not contribute to the accident; but where the danger is patent, and he willingly joins with the driver in testing it, and makes no attempt by remonstrance or otherwise to restrain the negligent driver, but on the contrary participates

in the negligence that brings about the accident, he is responsible for the consequences of his own act: Crescent Twp. v. Anderson, 114 Pa. 643 ; Dean v. R. R., 129 Pa. 514; Carr v. The City, 142 Pa. 139; O'Toole v. R. R., 158 Pa. 99.

The court should not have allowed the case to go to the jury on what was at best a mere scintilla of evidence: Howard Express Co. v. Wile, 64 Pa. 201; School Co. v. Warsaw, 122 Pa. 494; Lerch v. Bard, 153 Pa. 572.

*Robert Alexander,* of *Alexander & Magill,* for appellee.—When material facts are disputed, or even in doubt, or inference of facts are to be drawn from the testimony, it is the exclusive province of the jury to determine what the facts are, and apply them to the law as declared by the court: Baker v. Westmoreland & Cambria Gas Co., 157 Pa. 593; Del. etc. R. v. Jones, 128 Pa. 314; Howett v. Phila. Wil. & Balt. R. R., 166 Pa. 607; Howard Express Co. v. Wile, 64 Pa. 201; School Co. v. Warsaw, 122 Pa. 494; Lerch v. Bard, 153 Pa. 572.

The contention of the appellee is that for the purposes of this action the minor son must be considered the servant of the father: 2 Thompson on Negligence, 899; Wood on Master & Servant, 527, 552; McClung v. Dearborn, 134 Pa. 396; Hower v. Ulrich, 156 Pa. 410.

Under the authority of Carlisle Borough v. Brisbane, 113 Pa. 544; Dean v. R. R., 129 Pa. 514; Carr v. Easton, 142 Pa. 139, negligence of Collins cannot, as a matter of law, be imputed to Miller. In such a case, the person carried by another in a private vehicle, as an act of kindness, is responsible for his own negligence but not that of the driver.

OPINION BY Mr. JUSTICE DEAN, February 3, 1896 :

On the 17th of August, 1892, the defendant, his son Myer, then fifteen years of age, his daughter Sophie, and her friend, Miriam Saller, went horseback riding in Fairmount Park; in the course of their ride, they followed the park drive on east side of the Schuylkill; on the same drive, coming towards the city and meeting them, were plaintiff and his friend, William L. Collins, in a light one-horse buggy ; the horse and buggy belonged to Collins, who had invited plaintiff to ride with him into the city ; on their way, in front of them, going in the same

direction, was a two-horse vehicle called a Germantown wagon, on the right hand or same side of the road, which at this point was thirty-eight feet wide ; this wagon was being driven at a slow pace, about three feet from the gutter at the right side of the roadway; Collins was driving, according to his statement, at a moderate jog trot, and turned to the left to pass the wagon in front; as he turned out in the roadway to get around it, the horseback party, four abreast, came up ; there was space enough for all, but as they met, the width between the Germantown wagon and the nearest horse, on which Myer, the son, was riding, seemed narrow for plaintiff's buggy to pass, and Myer attempted to fall back behind the other three, just at the instant Collins pulled his horse again to the right to get in front of the Germantown wagon; this movement, of course, threw the hind wheel of the buggy towards the left of the roadway; Myer's horse, as such animals frequently do when checked suddenly, backed, throwing his hind quarters somewhat to his left, but to plaintiff's right of the roadway, bringing his horse in collision with the left hind wheel of the buggy ; the wheel broke ; Collins' horse took fright and ran away, throwing plaintiff out, fracturing his ankle so seriously that amputation was necessary. Myer's horse was knocked down, and his rider thrown.

The plaintiff, averring negligence in the son, in backing the horse, and averring this movement was at the time directed by the father, brought suit against the father for damages. The learned judge of the court below submitted the evidence to the jury to find whether the injury was caused by the negligence of Myer Cohen. There was a verdict for plaintiff in sum of $4,500, and judgment being entered thereon, defendant appeals, alleging : 1. There was no evidence of negligence to submit to the jury. If there were, 2. The father is not, under this evidence, answerable for the negligence of the son.

A careful scrutiny of the charge on the subject of negligence, discloses no error in the statement of the law as to the relative rights and duties of the parties on the roadway ; all had a right there for either purpose of travel or pleasure ; each, however, was bound in the enjoyment of his right to exercise care according to the circumstances. The question is, whether there was any evidence showing want of care by defendant's son, under the circumstances here proven.

When an accident happens whereby serious injury results to some one, human sympathy is quickened, and usually jumps at once to two conclusions, first, that the accident might have been avoided, and second, that some one was negligent or it would not have happened. The first is generally correct; the second very often is not. Take the case before us: If public parks are to serve their purpose, are to be resorted to by the public of a great city, in search of health and pleasure, there is some degree of risk incident to the use, which risk can only be absolutely avoided by not going near them. Horses do not always obey the voice of, nor are they always controllable by the reins of the most careful and expert riders and drivers. Every one using the driveways of the park is in some danger, not only from his own animal, but from those of others, which at times become uncontrollable. To be wholly free from such danger, one must neither ride nor drive. And still further, by very exceptional care in the use of driveways, some accidents might be avoided; here, if the plaintiff had stopped on the right hand side of the road until the horseback riders had passed; or, if the latter had stopped until plaintiff had passed; or, if instead of trotting their horses, they had both slowly walked them, the accident would not have happened. But with a clear roadway thirty-eight feet wide, there was ample room, without apparent danger, for greater speed than a walk. And while it may be said the accident could have been avoided, up to this point, there is no evidence of want of care according to the circumstances, on part of either, in getting into the situation which resulted in the injury. All that can be said is, the accident was avoidable by the exercise of extraordinary caution by either, a degree of care to which neither was bound; there was a remotely possible danger in a buggy passing four horses on a roadway almost wide enough for the passage of two troops of cavalry, but so remotely possible, there was no want of care in either attempting it at the moderate gait plaintiff alleges each was going. It is not negligence not to foresee and avoid the barely possible; the natural and probable consequences of one's acts must be foreseen and provided against.

We speak now, solely of the relative rights and obligations of the public in the use of the drives in a public park. What

might constitute care, or manifest the want of it, under other circumstances, is not before us for decision.

But Collins, plaintiff's driver, turns out to drive around the Germantown wagon going the same way; just at this moment, the four horses are coming on his left hand, meeting him; he turns in towards the right to get in front of the wagon; Myer Cohen, the rider next him, attempts to fall back behind his companions to give Collins more space,—his horse throws his haunches in front of the hind wheel of the buggy, and the disaster follows. Where is the negligence in this? Where the want of care according to the circumstances? Cohen is endeavoring to make room for Collins' buggy, that a collision may not occur. Assume the fact to be as plaintiff alleges, that Cohen's horse backed across the road when checked by the reins in the hands of his rider; it is not pretended he tried to imperil himself and horse by placing the haunches of the latter in the way of a fast moving buggy wheel. To fix the liability of the father, plaintiff strenuously contends, the son was obeying the father's command to fall back. This is doubtless true; the son attempted to obey and checked his horse; the animal backed partly across the road. Is defendant to be held answerable, because, in a sudden emergency, thrust upon him by the rapid movement of the horse and buggy, the dumb animal did not fall back in a straight line, as his rider attempted to direct him?

Are these as we have stated them, the established facts? Both plaintiff's and Collins' testimony is, that they had turned out to the left to pass the Germantown wagon, and when in the act of turning to the right, in front of it, their buggy was partly across the roadway; when they first turned to the left, neither of them saw the horseback riders; then, almost at the instant they saw them occurred the collision, the buggy striking the haunches of Myer Cohen's horse. And the declarations of plaintiff immediately after the accident are wholly corroborative of his testimony at the trial; the only variance is, he now draws another inference from the same facts. C. S. Albany, Park Guard No. 3, rode with plaintiff in the ambulance the evening of the same day as the accident, the 17th of August, and made report of it to his superior the next day; he says he did not know Mr. Miller and he testifies his written report is true. This is the report:—

" RIDGE AVE. & WISSA., August 18th, 1892.
" CAPT. L. M. CHASTEAU.

" Dear Sir : The following is the statement of Mr. Harvey Miller, the gentleman who had his leg broken in accident last evening.

" ' I was at Riverside Mansion and met with a friend who desired me to ride home with him. We were driving behind a cab and desired to pass it, and in turning out from behind it we ran into a horse coming in the opposite direction. The horse shied and broke our wheel, throwing us out. Our horse started off. We did not see the horse coming, or the accident could have been avoided.'

" Respectfully,
" C. S. ALBANY, Guard 3."

It will be noticed this report is made the next day, when there could have been no tampering with the witness, and when there could have been no conceivable motive on his part for falsifying or suppressing the truth ; it narrates Miller's statement when every incident of the unfortunate accident was fresh in his mind, and is reduced to writing when the statement is fresh in the mind of the officer. No one with opportunity for observation of judicial proceedings, has failed to notice the lamentable infirmities of human recollection, and the tendency after the lapse of time to believe that which it is the interest of the witness to have appear as the truth. Hence, the judicial value given to testimony reduced to writing at the time the facts stated in it occurred.

Dr. Rath, a witness called by and who attended plaintiff at the hospital, and rode with him in the ambulance when the statement was made to officer Albany, testifies thus : " Q. Did he ever tell you anything about it? A. Nothing particular, only that he stated it was merely an accident and nobody to blame for it. Q. Where did he say that to you? A. The first time on the way to the hospital in the ambulance ; I went with him."

The plaintiff, in regard to these declarations, testifies thus : " Q. Do you know this gentleman, Mr. Albany? (Indicating a person in the courtroom.) A. Yes, sir. Q. Do you remember seeing this gentleman there? A. Yes, sir. Q. Did he go up

to the hospital with you? A. Yes, sir. Q. Do you remember making the statement to that gentleman? A. No, sir. Q. Do you remember saying to that gentleman that you drove around the cab, as you desired to pass it? A. Yes. Q. And as you turned out from behind you ran into the horse coming from the opposite direction? A. No, sir. Q. You did not say that? A. I don't remember saying that. Q. Didn't you say you did not see the horse coming or the accident could have been avoided? A. That part I might have said. I don't remember that statement at all. The first I knew of that statement was one year ago—seventeen months after the accident occurred. I called on Dr. Rath to subpœna him for this case, when it was coming up for trial a year ago. Dr. Rath told me about this statement—(Objected to by plaintiff's counsel.) Q. Did you ever tell Dr. Rath or the Cohen party or any one, in any way, that it was your own fault? A. No, sir."

The substance of this testimony is, that he does not recollect the statement to Albany, and he positively denies that he said the accident was his own or Collins' fault. While he denies stating the inference testified to by Dr. Rath, that "nobody was to blame," he testifies now to the facts which warrant precisely that inference and no other. Myer was not reckless or careless, but attempted to do that, which under the circumstances, care suggested. In attempting to do this, the peculiar position of the vehicle and the uncontrollable movement of the horse resulted in an accident for which blame attaches to neither; if to any one, it is to Collins, who says, while driving, he never looked to the left side of the road.

A careful examination of every word of plaintiff's evidence fails to disclose any negligence on part of defendant. The jury, evidently, undertook to compensate plaintiff for a most grievous injury out of defendant's pocket, because the latter and his party happened to be out riding at that particular place, when plaintiff and Collins desired to drive around a wagon in front of them. The cause of action against the owner of the Germantown wagon would have been just as well founded; if he had not been in front of plaintiff, the accident would not have happened; if defendant and his family had not been coming towards them it would not have happened; and this is the sum of the evidence to sustain the verdict.

As there was no evidence of negligence, the first assignment of error is sustained, and the judgment is reversed.

To pass on the other assignment, would add nothing in vindication of our judgment, therefore as to it, we express no opinion.